UNITED STATES, Appellee

v.

Harvey A. GARDINIER II, Staff Sergeant
U.S. Army, Appellant

No. 06-0591

Crim. App. No. 20020427

United States Court of Appeals for the Armed Forces

Argued March 15, 2007

Decided June 6, 2007

ERDMANN, J., delivered the opinion of the court, in which BAKER,
STUCKY, and RYAN, JJ., joined.  EFFRON, C.J., filed a separate
opinion concurring in part and dissenting in part.

Counsel

For Appellant:  Captain Seth A. Director (argued); Colonel John
T. Phelps II, Lieutenant Colonel Steven C. Henricks, and Major
Fansu Ku (on brief); Captain Julie Caruso and Captain Charles E.
Pritchard.

For Appellee:  Captain Philip M. Staten (argued); Colonel John
W. Miller II, Lieutenant Colonel Michele B. Shields, and Major
Tami L. Dillahunt (on brief); Lieutenant Colonel Francis C.
Kiley and Captain Michael Friess.

Amicus Curiae for Appellant:  April Trimble (law student)
(argued); Bruce A. Antkowiak, Esq. (supervising attorney) and
Salvatore Bauccio (law student) (on brief) – for the Duquesne
University School of Law.

Military Judge:  Gary V. Casida

**This opinion is subject to revision before final publication.**

United States v. Gardinier II, No. 06-0591/AR

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Harvey A. Gardinier II was charged with two specifications of taking indecent liberties with a female under sixteen years of age with intent to gratify his sexual desires and two specifications of committing indecent acts upon the body of the same child, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000).  Gardinier entered pleas of not guilty and was tried by a military judge sitting alone as a general court-martial.  He was found guilty of one specification of taking indecent liberties and one specification of committing indecent acts and not guilty of the other two specifications.  Gardinier was sentenced to a bad-conduct discharge, confinement for three years, and reduction to the grade of Private E-1.  The convening authority approved the sentence and the United States Army Court of Criminal Appeals affirmed the findings of guilty and the sentence.  United States v. Gardinier, 63 M.J. 531, 547 (A. Ct. Crim. App. 2006).

General Background

In December 2001, Gardinier's five-year-old daughter, KG, told her mother that Gardinier had touched her inappropriately. Her mother immediately took KG to Evans Army Community Hospital in Ft. Carson, Colorado, where a medical examination was conducted.  The allegations were also reported to the El Paso County (Colorado) sheriff's office and the El Paso County

2

United States v. Gardinier II, No. 06-0591/AR

Department of Human Services.  On January 2, 2002, personnel from those agencies conducted a joint interview of KG, which was videotaped.  That interview was immediately followed by a forensic medical examination by a sexual assault nurse examiner.

On January 3, 2002, Gardinier was interviewed by a sheriff's department detective and then separately by an Army Criminal Investigation Division (CID) agent.  The CID agent did not advise Gardinier of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2000).  Both interviews were videotaped and Gardinier provided a written statement at the request of the CID agent.  On January 7, the CID agent advised Gardinier of his Article 31, UCMJ, rights.  Gardinier waived his rights and provided another statement.

At trial the military judge admitted the videotape of the January 3 CID interview and both the January 3 and January 7 statements.  He also admitted the "Forensic Medical Examination" form completed by the sexual assault nurse examiner and allowed her to testify as to what KG told her during the examination.  Further, the military judge determined that KG was not available to testify at trial and admitted the videotape of KG's interview with the El Paso law enforcement and human services officials.  All of this evidence was admitted over defense objection.

We granted review of three issues:  (1) whether the military judge erred by admitting statements that Gardinier made

3

to the CID agent where no Article 31(b), UCMJ, rights were given; (2) whether statements that KG made to the sexual assault nurse examiner were testimonial under Crawford v. Washington, 541 U.S. 36 (2004); and (3) whether the Army Court of Criminal Appeals erred in determining that the admission of the victim's videotaped statement was harmless beyond a reasonable doubt.[1]

As we determine that the January 3 videotape of the CID interview, Gardinier's January 3 statement to the CID agent and KG's statements to the sexual assault nurse examiner were admitted in error, we remand the case to the Army Court of Criminal Appeals for further consideration.

### Admissibility of the January 3 Statement and Videotape

A military investigator who interviews a suspect must provide that suspect with the statutorily required rights warnings under Article 31(b), UCMJ.  With few exceptions, statements obtained in violation of this Article may not be received in evidence against an accused in a trial by court-martial.  Article 31(d), UCMJ; United States v. Ruiz, 54 M.J. 138, 140 (C.A.A.F. 2000); Military Rule of Evidence (M.R.E.)

---

[1] We heard oral argument in this case at Duquesne University School of Law, Pittsburgh, Pennsylvania, as part of the court's "Project Outreach."  See United States v. Mahoney, 58 M.J. 326, 347 n.1 (C.A.A.F. 2003).  This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

304; M.R.E. 305. We granted review of this issue to determine whether the military judge abused his discretion by admitting statements from Gardinier in violation of Article 31(d), UCMJ. We find that the January 3 statement and the videotape of the CID interview were admitted in error. The January 7 statement was properly admitted.

Background

A detective from the sheriff's office called Gardinier in for questioning on January 3, 2002, and notified a CID agent, Special Agent Phillips about the interview. Gardinier appeared voluntarily and was told he was not under arrest and free to leave at any time. The sheriff's detective advised Gardinier of his rights under Miranda v. Arizona, 386 U.S. 436 (1966), which he waived. Later in the interview and before he voluntarily took a computer voice stress test, Gardinier was once again given and waived his Miranda rights.

Phillips watched the interview from behind a one-way mirror. At its conclusion, the sheriff's detective consulted with Phillips who asked to interview Gardinier. The sheriff's detective brought Phillips into the interview room and left. Phillips introduced himself as a CID agent and conducted the interview without advising Gardinier of his Article 31(b), UCMJ, rights. He also asked Gardinier to provide a written statement,

5

which he did.  Both the civilian and military interviews were videotaped.

On January 7, 2002, Phillips called Gardinier to the CID office, advised him of his Article 31(b), UCMJ, rights and told him that another statement was necessary because he may not have been properly warned on January 3.  Gardinier waived his Article 31(b), UCMJ, rights and provided another statement.

At trial, Gardinier moved to suppress the January 3 statement, the videotape of the January 3 interviews and the January 7 statement.  The military judge denied the motion.  While he found that Phillips should have advised Gardinier of his rights under Article 31(b), UCMJ, the failure was "harmless error or not prejudicial to the substantial rights of the accused and had no effect on the decisions that he made."  In light of the Miranda warnings given by the civilian detective, the military judge concluded that Gardinier was "in substance, advised of all of his rights."  On appeal, the Court of Criminal Appeals found that the rights warnings and notice regarding the nature of the accusations that Gardinier received from the sheriff's detective satisfied the requirements of Article 31(b), UCMJ.  Gardinier, 63 M.J. at 534-35 n.3.

## Discussion

Rights advisements are required in both the civilian and military communities "'to avoid impairment of the constitutional

guarantee against compulsory self incrimination.'"  United States v. Harvey, 37 M.J. 140, 143 (C.M.A. 1993) (quoting United States v. Gibson, 3 C.M.A. 746, 752, 14 C.M.R. 164, 170 (1954)); United States v. Rogers, 47 M.J. 135, 136 (C.A.A.F. 1997).  In the civilian community, rights advisements are required by the 1966 United States Supreme Court decision Miranda v. Arizona. The corresponding requirement in the military community is found in Article 31(b),[2] UCMJ, which has essentially been in this form since its inception in 1950[3]:

> No person subject to this chapter may . . .
> interrogate, or request any statement from an accused
> or a person  suspected of an offense without first
> informing him of the nature of the accusation and
> advising him that he does not have to make any
> statement regarding the offense of which he is accused
> or suspected and that any statement made by him may be
> used as evidence against him in a trial by court-
> martial.

We have previously recognized that a rights advisement has particular significance in the military context:  "'Because of the effect of superior rank or official position upon one subject to military law, the mere asking of a question under certain circumstances is the equivalent of a command.'"  Harvey, 37 M.J. at 143 (quoting Gibson, 3 C.M.A. at 752, 14 C.M.R. at

---

[2] Article 31(b), UCMJ, rights differ slightly from Miranda rights.  See United States v. Rogers, 47 M.J. 135, 137 (C.A.A.F. 1997) (outlining the differences between the rights warnings under Article 31(b), UCMJ, and under Miranda).
[3] See Act of May 5, 1950, ch. 169, 64 Stat. 107, 118 (Article 31).  In 1956, the word "may" was substituted for the word "shall."  Act of Aug. 10, 1956, ch. 1041, 70A Stat. 48.

United States v. Gardinier II, No. 06-0591/AR

170).  "'Conditioned to obey, a serviceperson asked for a statement about an offense may feel himself to be under a special obligation to make such a statement.'"  Id. at 143 (quoting United States v. Armstrong, 9 M.J. 374, 378 (C.M.A. 1980)).

We have also recognized that Congress enacted Article 31(d), UCMJ, as a "strict enforcement mechanism to implement the rights' warning requirements" of Article 31(b), UCMJ.  United States v. Swift, 53 M.J. 439, 448 (C.A.A.F. 2000).  Article 31(d) provides that "[n]o statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."  In addition, M.R.E. 305(a) and (c) provide that statements obtained without a proper rights warning are defined as "involuntary" and excluded from evidence by operation of M.R.E. 304(a).[4]

The military judge found that the sheriff's office was not conducting a joint investigation with the military at the time the civilian detective gave the rights advisement under Miranda. The military judge further determined that Phillips should have given Gardinier a rights advisement under Article 31(b), UCMJ.

---

[4] M.R.E. 304(b) notes some exceptions to complete evidentiary exclusion.  This case does not involve any of these exceptions.

United States v. Gardinier II, No. 06-0591/AR

In light of these determinations, the January 3 statement and videotape of the CID interview should have been excluded under Article 31(d), UCMJ, M.R.E. 304(a), and M.R.E. 305(a) and (c), and the military judge's failure to do so was legal error.

Where an earlier statement was "involuntary" only because the accused had not been properly warned of his Article 31(b), UCMJ, rights, the voluntariness of the second statement is determined by the totality of the circumstances. See United States v. Brisbane, 63 M.J. 106, 114 (C.A.A.F. 2006) (quotation and citation omitted). The earlier unwarned statement is a factor in this total picture, but it does not presumptively taint the subsequent statement. Id. If a "cleansing warning" has been given -- where the accused is advised that a previous statement cannot be used against him -- that statement should be taken into consideration. Id. If a cleansing statement is not given, however, its absence is not fatal to a finding of voluntariness. Id.

While we have found that the military judge made a legal error in admitting the January 3 statement and videotape, we are bound by his factual findings concerning the circumstances of the interviews if they were not clearly erroneous. See United States v. Burris, 21 M.J. 140, 144 (C.M.A. 1985). In reviewing those circumstances we note that when the CID agent conducted his first interview on January 3, he did so in a professional,

9

noncoercive manner.  Just before this interview, Gardinier received two Miranda warnings during his questioning by civilian authorities, which he waived without hesitation.  The military judge found that "[a]t all times [Gardinier] was free to exercise his own judgment and to make choices without improper or illegal influence from any law enforcement authority."

When he was called back to the CID office on January 7, the CID agent gave Gardinier his Article 31(b), UCMJ, rights and told him that another statement was needed because he may not have been properly warned of his rights on January 3.  Gardinier waived his Article 31, UCMJ, rights, just as he had previously waived his Miranda rights.  While the CID agent did not specifically inform Gardinier that the January 3 statement might not be admissible against him, the written rights advisement did state, "[y]our prior statement you provided on 3 Jan 02, was given with [what] may not have been a proper rights advisement. Now that a proper rights advisement has been provided, are you willing to provide an additional statement?"  Gardinier wrote the word "yes" by this statement followed by his initials, indicating that he had read it and thus also had an opportunity to ask questions regarding its meaning.

There is no suggestion that either the January 3 or the January 7 interview was a coercive event, nor do Gardinier's relative age and maturity level raise concerns about the

10

statement's voluntariness. Under the totality of the circumstances surrounding both the January 3 and January 7 statements, we conclude that Gardinier's decision to make a second statement on January 7, 2002, was made voluntarily following a proper Article 31(b), UCMJ, rights advisement and was therefore admissible.

### KG's Statements to the Sexual Assault Nurse

The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 53-54. We granted review of this issue to determine whether statements that KG made to the sexual assault nurse examiner were testimonial hearsay. We hold that these statements were testimonial and their admission into evidence at the court-martial was error.

Background

After KG reported to her mother that her father touched her inappropriately, KG's mother took her to the Evans Army Community Hospital for examination. A few days later, the sheriff's department and the human services department conducted a joint interview of KG. Immediately following that interview KG was examined by Ms. Valerie A. Sievers, a sexual assault nurse examiner (SANE). Ms. Sievers, who also described herself

as a clinical forensic specialist, conducted a forensic medical examination of KG and completed a report entitled "Forensic Medical Examination Form." This form included a section on patient history in which Ms. Sievers documented statements that KG made about Gardinier's conduct.

At trial, the complete form was admitted into evidence as was Ms. Sievers' testimony about KG's statements. The Government called Ms. Sievers to testify as an expert in the area of sexual assault nursing and examination. During her testimony, trial counsel moved for admission of Ms. Sievers' complete report under the business records exception to the hearsay rule, M.R.E. 803(6). Defense counsel's objection on authentication grounds was overruled. Defense counsel later objected to Ms. Sievers' testimony about KG's statements on hearsay grounds. Trial counsel argued that the testimony was "off of her document, which [was] already admitted into evidence" and that it fell "under the medical rules exception." Defense counsel's objection was overruled and the testimony was allowed.

Discussion

Whether these statements are inadmissible hearsay under Crawford is a question of law that we review de novo. United States v. Rankin, 64 M.J. 348, 351 (C.A.A.F. 2007). Without articulating a comprehensive definition of "testimonial" in

Crawford, the Supreme Court "set forth '[v]arious formulations' of the core class of 'testimonial' statements." United States v. Davis, 126 S. Ct. 2266, 2273 (2006). We recognize that these formulations should not be viewed as an exhaustive list of testimonial statements. Id. (noting that the Court found it unnecessary to endorse any of the formulations because "some statements qualify under any definition"). Nevertheless, one of these formulations, i.e., "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" offers a useful baseline to begin analysis of the testimonial quality of the statements at issue in this case. Crawford, 541 U.S. at 51-52.

In Rankin, we identified several factors that could be considered when distinguishing between testimonial and nontestimonial hearsay under these circumstances. 64 M.J. at 352. Those factors include: (1) was the statement elicited by or made in response to law enforcement or prosecutorial inquiry?; (2) did the statement involve more than a routine and objective cataloging of unambiguous factual matters?; and (3) was the primary purpose for making, or eliciting, the statement the production of evidence with an eye toward trial? Id. (C.A.A.F. 2007) (citation and quotation omitted). In undertaking this factors approach, our goal is an objective look

13

at the totality of the circumstances surrounding the statement to determine if the statement was made or elicited to preserve past facts for a criminal trial. Cf. Davis, 126 S. Ct. at 2273-74 (distinguishing between testimonial and nontestimonial statements made in the course of police interrogation by determining whether the circumstances objectively indicate that the primary purpose is to prove past events potentially relevant to later criminal prosecution).

In applying this approach to the statements that Ms. Sievers elicited from KG, we consider the first and third factors together because they are related in this factual context.[5] We determine that on balance the evidence tips towards a conclusion that the statements were elicited in response to law enforcement inquiry with the primary purpose of producing evidence with an eye toward trial.

Ms. Sievers is a coordinator for the Colorado SANE Program and also conducts sexual assault examinations at the Children's Advocacy Center. It was in this capacity that she examined KG. Ms. Sievers testified that she elicited a patient history from KG "to determine diagnosis and treatment," and she completed the

---

[5] As to the second factor, we have no difficulty concluding that Ms. Sievers' documentation of KG's allegations of sexual abuse is more than a routine and objective cataloging of unambiguous factual matters. See United States v. Magyari, 63 M.J. 123, 126-27 (C.A.A.F. 2006) (holding that data entries by lab technicians fit into this category).

"treatment" section on the medical form referring KG to Evans Army Community Hospital for follow-up care.  However, Ms. Sievers also testified that she sees children at the Children's Advocacy Center to conduct forensic evaluations and detailed genital examinations.[6]  Although there is a "treatment" section on the form, the form itself is entitled a "Forensic Medical Examination Form" rather than simply a medical exam form and Ms. Sievers referred to the report as "the medical legal record." We also note that one of questions Ms. Sievers asked KG was: "Can you tell me what you talked about with Ken the policeman?" This question reflects more of a law enforcement purpose and less of a medical treatment purpose.

In addition, the Government concedes that the sheriff's office was involved in arranging the examination; the consent form for the examination stated that the medical report would be provided to law enforcement; the report was sent to the sheriff's office; the sheriff's office was billed for the forensic medical exam; and the forensic medical examination form was introduced by the Government at Gardinier's court-martial after the Government established that Ms. Sievers has testified as an expert in the area of SANE examinations over fifty times and qualified her as an expert in this area.

---

[6] "Forensic" is defined as "[u]sed in or suitable to courts of law or public debate."  Black's Law Dictionary 676 (8th ed. 2004).

United States v. Gardinier II, No. 06-0591/AR

We recognize that the referral of an alleged victim to a medical professional by law enforcement or trial counsel does not always establish that the statements at issue were made in response to a law enforcement or prosecution inquiry or elicited with an eye toward prosecution.  Cf. United States v. Rodriguez-Rivera, 63 M.J. 372, 381 (C.A.A.F. 2006).  Here, however, the evidence indicates that Ms. Sievers, who specialized in conducting forensic medical examinations, performed a forensic medical exam on KG at the behest of law enforcement with the forensic needs of law enforcement and prosecution in mind. Under the totality of the circumstances presented here, KG's statements to Ms. Sievers are testimonial and were admitted in error.

The Court of Criminal Appeals' Article 66(c), UCMJ, Review and Consideration of Prejudice Under New Evidentiary Landscape

The Court of Criminal Appeals concluded that the military judge abused his discretion in finding that KG was legally unavailable to testify within the meaning of M.R.E. 804(a).  63 M.J. at 540.  The lower court found that the subsequent admission of KG's videotaped interview with the civilian authorities violated Gardinier's Sixth Amendment right to confrontation.  Id. at 543-44.  However, in considering the other evidence admitted at trial, the lower court ultimately

16

concluded that the erroneous admission of the videotape was harmless beyond a reasonable doubt.  Id. at 545.

We have determined that the following evidence was admitted in error:  (1) Gardinier's January 3, 2002 statement; (2) the January 3 videotape of the CID interview with Gardinier; and (3) the statements KG made to Ms. Sievers during the sexual assault examination.  These determinations change the evidentiary landscape that was before the Court of Criminal Appeals when it conducted its initial review.

In light of this changed evidentiary landscape, it is appropriate that we return the case to the Court of Criminal Appeals to conduct an Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2000), factual sufficiency review and also to consider whether the erroneous admission of KG's videotaped interview with the civilian authorities was harmless beyond a reasonable doubt.  In addition, the admission of Gardinier's January 3, 2002, statement, the admission of the videotape of Gardinier's interview with the CID agent, and the admission of KG's statements to Ms. Sievers were errors of constitutional magnitude.  See Crawford, 541 U.S. at 61; Brisbane, 63 M.J. at 116 (reviewing Article 31(b), UCMJ, error under standard of harmless beyond a reasonable doubt).  Therefore, the Court of Criminal Appeals should also consider whether those errors were harmless beyond a reasonable doubt.

17

## Decision

The decision of the United States Army Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further review consistent with this opinion.

EFFRON, Chief Judge (concurring in part and dissenting in part):

I concur in the majority opinion's determination that a remand is warranted because the military judge erred in permitting the introduction of the key pieces of evidence. First, the military judge erroneously permitted a sexual assault nurse to recount KG's statements, which constituted inadmissible testimonial hearsay under the Confrontation Clause of the Sixth Amendment. See Crawford v. Washington, 541 U.S. 36 (2004). Second, the military judge erred in admitting into evidence Appellant's January 3 statement to the Army Criminal Investigation Division (CID) and the related videotape of his interview with the CID because these statements were obtained without providing Appellant with the rights warnings required by Article 31(b), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831(b) (2000). I respectfully disagree, however, with the majority opinion's determination that Appellant's January 7 statement, obtained by the same CID agent without a cleansing warning, was admissible.

Successive interrogations after an unwarned statement

As the majority opinion observes, United States v. Brisbane, 63 M.J. 106 (C.A.A.F. 2006), provides the appropriate framework for analyzing the admissibility of Appellant's second statement. In Brisbane, we noted that when a statement is

inadmissible because an individual was not provided with the applicable rights warning, the voluntariness of a second statement is determined by the totality of the circumstances. Id. at 114. In assessing the totality of the circumstances, we take into account the presence of a "cleansing warning" -- that is, advice that a person's prior statement cannot be used against that person. Id. The absence of a cleansing warning is a factor to be considered under the totality of the circumstances, but "the absence of such [a warning] is not fatal to a finding of voluntariness." Id.

When an accused challenges the admissibility of a statement under Article 31(b), UCMJ, and Military Rule of Evidence (M.R.E.) 305, the government bears the burden of establishing that the statement is admissible. See United States v. Benner, 57 M.J. 210, 212 (C.A.A.F. 2002). When a court determines that an earlier statement is inadmissible, the government bears the burden of demonstrating that a subsequent statement is admissible under the totality of the circumstances. United States v. Phillips, 32 M.J. 76, 80 (C.M.A. 1991).

Appellant's unwarned statement and the subsequent interrogation

The record reflects a direct connection between Appellant's unwarned statement on January 3 and his decision to respond to CID's request for a statement only four days later on January 7. Appellant testified that subsequent to his January 3 statement,

2

he was directed by his first sergeant to call the CID agent, Special Agent Phillips. According to Appellant, Special Agent Phillips "asked me if I could come in to clarify questions and clarify or follow up on questions that were asked on the 3rd of January." Appellant added: "Basically, all he was looking for was to clarify what was said and, you know, make sure that what I was talking about was accurate, or you know, he wanted to get it down on forms there, too." When asked if Special Agent Phillips had told him that his January 3 statement might not be able to be used against him, Appellant said: "I don't remember him saying anything about it could be used against me."

Appellant offered the following explanation for his decision to make a statement to Special Agent Phillips on January 7 in light of his prior statement to Phillips on January 3: "I just thought he knew what he wanted to know. I mean, all he was in there to do was basically clarify what was said and basically rehash the 3 January interview."

At the January 7 interview, Special Agent Phillips presented Appellant with a rights waiver certificate containing the following advisement: "Your prior statement you provided on 3 Jan 02, was given with [what] may not have been a proper rights advisement." The military judge, in his findings of fact, stated that Special Agent Phillips "did not explain what [the January 7 advisement] meant; i.e., he did not give a

cleansing warning."  In his conclusions of law, the military judge determined that a cleansing warning was not required because Appellant "was, in substance, advised of all of his rights" before he made the January 3 statement.

The military judge erred in his conclusion on the January 7 statement because it was based on his erroneous determination that the January 3 statement was admissible.  The Court of Criminal Appeals likewise erred in its conclusion that the January 3 statement was admissible.

The Government had an opportunity at trial to rebut Appellant's testimony that he gave a statement on January 7 because the Government already possessed the January 3 statement and the admissions contained therein.  Special Agent Phillips did not tell him that his earlier statement could not be used against him at trial.  In view of the fact that qualified military judges at both the trial and intermediate appellate level believed as a matter of law that the January 3 statement was admissible, it was reasonable for Appellant -- a layman -- to assume on January 7 that his choices were constrained by the Government's ability to exploit the incriminating statements from his January 3 statement.  The Government was required to show that Appellant voluntarily made a second statement after making an earlier involuntary statement.  See Brisbane, 63 M.J. at 114.  The Government, however, chose at trial not to rebut

4

Appellant's testimony about his reasons for providing a statement on January 7, preferring to rely on its belief in the propriety of the January 3 statement.  Although the absence of a cleansing warning is not always fatal, in this case, the record reflects a statement obtained by the same law enforcement agent close in time to the unwarned statement.  Appellant reasonably viewed his options as constrained by the earlier statement.  In that context, Government has not met its burden of demonstrating that the January 7 was admissible under the totality of the circumstances.  Accordingly, I respectfully dissent from that portion of the majority opinion that would permit reliance on the January 7 statement.