**Oscar Pena DELAPAZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–06–00146–CR.**

Court of Appeals of Texas, Eastland.

June 14, 2007.

Discretionary Review Granted Oct. 3, 2007.

Rick Dunbar, Abilene, for appellant.

Mark Edwards, Dist. Atty., Ann Reed, Asst. Dist. Atty's Office, Sweetwater, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

The jury convicted Oscar Pena Delapaz of two counts of aggravated sexual assault and one count of injury to a child and assessed his punishment at seventy-five years confinement for each of the aggravated sexual assault counts and twenty years confinement for the injury to a child count. A $10,000 fine was assessed for each count. We affirm.

### I. *Background Facts*

Angie Medina and Delapaz lived together and had five children, including their seven-year-old daughter K.D. One afternoon, Medina went shopping with her mother and niece and left Delapaz with the children. When she returned home, the kids were playing outside, and Delapaz was inside with the door locked. He unlocked the door for her and told her that K.D. was bleeding at her "middle spot." Delapaz had blood on his fingers, and K.D. had bloodstained toilet paper in her vagina. Delapaz did not want Medina to take K.D. to the hospital because he was concerned that CPS would become involved and take their children away, but Medina took K.D. to the Sweetwater hospital's emergency room anyway. Medina called Delapaz from the hospital to update him on K.D.'s condition. He then told her that K.D. had complained that a black boy injured her. He also put K.D.'s sister on the phone. In the background, Delapaz could be heard telling the child to say that K.D. injured herself when she fell out of a tree.

Sweetwater law enforcement officials were contacted. They interviewed Medina at the hospital. She consented to a search of her apartment. There they found damp, bloodstained clothing in the bathroom; bloodstains on the toilet seat; and bloodstained toilet paper in a trash can. The police asked Delapaz to come to the police station for an interview. He complied and provided them with a written statement in which he blamed K.D.'s injuries on an unknown black boy.

Meanwhile, K.D. was transferred to Hendrick Medical Center for further treatment. She was diagnosed with a second degree laceration that went approximately

one inch into her vagina and that required surgical intervention to repair. Hospital personnel suspected sexual abuse, and two days after her surgery, K.D. told a hospital social worker and a hospital nurse that her father had injured her. Delapaz was subsequently arrested. He gave a second statement in jail. This time he claimed that he accidentally cut K.D. while bathing her.

## II. *Issues*

Delapaz challenges his conviction with four issues. Delapaz argues that his rights under the confrontation clause were violated, that portions of the victim's medical records were inadmissible hearsay, that the trial court abused its discretion by excluding a witness pursuant to TEX.R. EVID. 614, and that he received ineffective assistance of counsel.

## III. *Analysis*

### A. *Confrontation Clause.*

■ The State offered medical records from Hendrick Medical Center and Rolling Plains Memorial Hospital that were filed under affidavit. Delapaz objected, contending that the records included inadmissible hearsay and that their admission violated his rights under the confrontation clause.[1] Specifically, Delapaz objected to notes made by Melissa Foss, a social worker employed by Hendrick Medical Center, and Casey Wasson, a hospital nurse. The challenged notes reflect that Foss interviewed K.D. in her hospital room and asked her what happened. K.D. told Foss

that her dad had poked her with his "pee-pee" and with his fingers. Foss asked Wasson to come into K.D.'s room, and K.D. repeated her accusation. Foss and Wasson made separate notes of their conversation with K.D. and included them in K.D.'s medical records.

The trial court sustained Delapaz's objection in part. The court allowed the State to introduce records containing statements made by K.D. and the questions to which she responded but ordered the State to redact any other third party statements. Delapaz argues on appeal that the trial court erred because the medical records contain K.D.'s testimonial declarations but he was not allowed to cross-examine her or the health-care professionals who interviewed her.[2]

We review Delapaz's constitutional issue de novo. *Davis v. State,* 169 S.W.3d 660, 665 (Tex.App.-Austin 2005), *aff'd,* 203 S.W.3d 845 (Tex.Crim.App.2006). In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Court held that the admission of testimonial hearsay violated the Sixth Amendment right to confrontation unless the declarant was shown to be unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. The Supreme Court did not provide an exclusive definition of testimonial statements but did hold that the confrontation clause applies to witnesses who "bear testimony," which, it noted, is "typically '[a] solemn declaration or affirmation made for the purpose of

1. U.S. CONST. amend. VI.

2. The text of Delapaz's second issue complains that he was unable to examine K.D. or the health-care professionals who interviewed her. Delapaz's trial objection did not complain of his inability to cross-examine K.D., and the body of his brief discusses only his inability to cross-examine the health-care pro-

fessionals. We do not read Delapaz's second issue to raise a confrontation clause claim due to his inability to cross-examine K.D. before her medical records were introduced. If so, that issue was not preserved for our review because it was not raised below and has not been briefed in this court.

establishing or proving some fact.'" 541 U.S. at 51, 124 S.Ct. 1354.

Foss's and Wasson's notes arguably raise two potential confrontation clause questions: Did K.D. really say what they wrote and, if so, are her accusations accurate? When the notes are stripped of any personal observation or third party comment, they remain evidence that K.D. implicated her dad to hospital staff but not evidence that K.D.'s accusations were true. The jury was tasked with determining whether K.D.'s accusations were accurate—not if the recorded conversations took place. K.D.'s accusations were certainly relevant to the jury's determination. However, their bare repetition does not fall within the Supreme Court's definition of testimonial statement; therefore, Delapaz's inability to cross-examine Foss and Wasson did not violate his right of confrontation. Delapaz's first issue is overruled.

*B.  Hearsay.*

■ Delapaz next argues that the challenged notes were inadmissible hearsay because there was no evidence that the statements were made for the purpose of medical diagnosis, care, or treatment. We review decisions to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a ruling that lies within "the zone of reasonable disagreement." *Id.*

■ Tex.R. Evid. 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This exception has been interpreted to include statements by suspected victims of child abuse as to the source of their injuries. *Burns v. State*, 122 S.W.3d 434, 438 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *Gregory v. State*, 56 S.W.3d 164, 183 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.-Fort Worth 1999, pet. ref'd).

■ The medical treatment exception assumes that the patient understands the importance of being truthful with health-care providers so as to receive an accurate diagnosis and treatment. *Burns*, 122 S.W.3d at 438. The exception also assumes that, in child abuse cases, the child's treatment includes being removed from the abusive setting; thus, the identity of the abuser is pertinent to their medical treatment. *Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). Texas courts have adopted a two-part test for determining whether the exception applies in a particular case: (1) the declarant must make the statement for the purpose of receiving treatment and (2) the content of the statement must be such as is reasonably relied upon by a health-care professional in the declarant's treatment or diagnosis. *Jones v. State*, 92 S.W.3d 619, 623 (Tex.App.-Austin 2002, no pet.).

Delapaz argues that the trial court abused its discretion because it had no evidence that K.D., who was seven years old at the time, understood the need to give truthful answers or that she appreciated that her statements were being made for the purpose of receiving medical care. The State responds that the trial court had circumstantial evidence of K.D.'s motive to seek medical treatment because she was talking to nurses and a social worker at the hospital and that the court could also consider the remainder of K.D.'s medical records. We note that in our analysis we may also consider the subsequent testimony of Pat Rollins, a sexual assault nurse examiner for Hendrick Medical Center,

and Dr. Michelle Johnson, a gynecologist who treated K.D. at Hendrick, because evidence prematurely admitted in error may become admissible or be rendered harmless by subsequent evidence. *James v. State,* 102 S.W.3d 162, 175 (Tex.App.-Fort Worth 2003, pet. ref'd).

The records, which were properly authenticated as business records pursuant to Tex.R. Evid. 803(6), establish that K.D.'s statements were made while she was receiving medical treatment at the hospital. K.D. arrived at Hendrick Medical Center at 7:25 p.m. on May 14, 2005. A progress note made that night shortly before K.D. was taken to surgery at 9:55 p.m., as well as the surgeon's notes, indicated that the hospital obtained some history from K.D.'s mother but that K.D. herself was quiet and nonverbal. K.D. apparently provided no historical information until the morning of May 16, when she made the statements to Foss and Wasson implicating her father.

The hospital relied upon K.D.'s statements. Dr. Paige H. Lemasters prepared K.D.'s discharge summary. Dr. Lemasters wrote that the admission and discharge diagnoses were perineal laceration, suspected sexual assault, and anemia. Dr Lemasters referred to K.D.'s statements to document the suspected sexual assault diagnosis. Dr. Lemasters also noted that, when K.D. was discharged from the hospital, she was in the care of her mother and a Sweetwater police officer and that they were to go directly to the Child Advocacy Center.

After the medical records were admitted, the State called Rollins and Dr. Johnson as witnesses. Rollins testified that they were initially unable to obtain a history from K.D. because she had a life-threatening injury due to the amount of blood loss and because the emergency room was not a kid-friendly environment. They performed a physical exam and determined that K.D. had suffered a vaginal injury similar to what would be found in a woman who had just delivered a baby, that K.D.'s injury was consistent with sexual assault, and that it required surgical intervention. Dr. Johnson confirmed that K.D.'s injuries were consistent with sexual assault and required surgery and that K.D. would not talk to hospital personnel the night of her admission.

Delapaz is correct that the State offered no express testimony that K.D. understood the need to be truthful when telling the social worker and nurse what had happened, but we can find no authority for the proposition that this specific testimony was necessary. In *Fleming,* the court recognized that the medical treatment exception assumes that the patient appreciates the need to provide accurate information but that the logic behind this assumption may break down when the victim is a young child. 819 S.W.2d at 247. The court affirmed the admission of a four-year-old child's statement to a health-care provider based, at least in part, on the provider's testimony that the child did not appear confused or coached. *Id.* The court did not, however, expressly state that the provider's testimony was essential.

Other courts have affirmed the admission of a young child's statement without express testimony of the child's trustworthiness. For example, in *Tissier v. State,* 792 S.W.2d 120, 125 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd), the court affirmed the admission of a physician's testimony that the five-year-old victim told him that the defendant had hit him in the stomach and then told him not to tell anyone about it. There is no indication in the court's opinion that the physician offered any testimony about the child's trustworthiness.

The admission or exclusion of a child's statement to a health-care provider is nec-

essarily a fact-driven inquiry not suscepti-ble to the application of bright-line rules. While no witness testified that K.D. under-stood the need to be truthful, the trial court had evidence that K.D. was seven years old at the time, that she made the statements while receiving medical care in the hospital, that her statements were con-sistent with the physical evidence, that her statements were made in response to ques-tions from health-care providers about her condition, that her statements were made outside the presence of any family member and only to hospital staff, and that the hospital relied upon them. We cannot say that the trial court abused its discretion when it determined that the medical treat-ment hearsay exception applied. Issue two is overruled.

### C. Witness Exclusion.

■ Delapaz's third issue complains that the trial court abused its discretion by excluding one of his witnesses pursuant to Rule 614, "the Rule." Delapaz invoked the Rule following the State's opening state-ment. After the State rested, he attempt-ed to call Angelica Gonzalez. The State objected because she had previously been present in the courtroom. The trial court conducted a hearing during which Gonza-lez acknowledged that she had been in the courtroom during the State's case and had heard some of the testimony.

Delapaz made a record of her expected testimony and developed that, if allowed, Gonzalez would testify that she was famil-iar with Delapaz and Medina's residence, that four other adults also lived there, and that Delapaz and Medina also had over-night guests on occasion. Delapaz's coun-sel advised the trial court that he did not realize that Gonzalez had material infor-mation until she spoke with him during a trial recess, at which time he instructed her not to return to the courtroom. The trial court sustained the State's objection and did not allow Gonzalez to testify be-fore the jury.

■ In criminal trials, the Rule's ap-plication must be balanced against the ac-cused's right to call witnesses on his be-half. *Davis v. State*, 872 S.W.2d 743, 745 (Tex.Crim.App.1994). As a general propo-sition, a witness cannot be excluded solely on the grounds that he or she violated the Rule, although the trial court's exercise of discretion must be considered in light of the particular circumstances of each case. *Holder v. United States*, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). When exercising this discretion, the trial court must balance the interests of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Webb v. State*, 766 S.W.2d 236, 244 (Tex.Crim.App.1989).

Because it is undisputed that Gonzalez was present in the courtroom and heard testimony after the Rule was invoked, we must perform a two-step analysis. First, were there other particular circumstances, other than the mere fact of the violation, that would tend to show the defendant or his counsel consented, procured, or other-wise had knowledge of the witness's pres-ence in the courtroom, together with knowledge of the content of that witness's testimony? Second, if no particular cir-cumstances existed to justify disqualifica-tion, was the excluded testimony crucial to the defense? *Id.* at 245.

In this instance, the second prong is dispositive. Delapaz contends that the ex-cluded testimony was crucial because it deprived him of the opportunity to demon-strate to the jury that there were other possible assailants. This is incorrect. Gonzalez's excluded testimony would have shown that other adults sometimes lived or

stayed at the house, but this fact was uncontested. Delapaz testified himself and told the jury that three other relatives had been living with them, had slept at the house the night of May 14, and were in the process of moving out. Medina testified that four other individuals had been staying at her house but that she made three of them leave the day before the incident. Delapaz's aunt testified that she saw several other adults at Medina and Delapaz's house shortly after the incident and that at least one of them was living there at the time. Gonzalez's excluded testimony, therefore, was cumulative.

Furthermore, the excluded testimony would not have otherwise impacted Delapaz's defense because there was no evidence connecting any other family member to K.D.'s injury. Gonzalez was not in Delapaz's house the day of the incident. Delapaz testified that, when Medina went shopping, he and his children were the only people at home. He did not claim that any other adult was responsible for K.D.'s injuries in the initial statement he provided to the police, in the statement he provided after his arrest, or in his trial testimony. Because the excluded testimony was not crucial to Delapaz's defense, we cannot find that the trial court abused its discretion, and issue three is overruled.

### D. *Ineffective Assistance.*

Delapaz contends that his trial counsel was ineffective for not objecting to statements made by Dr. Lemasters in K.D.'s medical records. Dr. Lemasters prepared K.D.'s discharge summary and, in that document, referred to K.D.'s statements to Foss and Wasson implicating her father. Delapaz conceded during oral argument that, if the trial court did not err by admitting Foss's and Wasson's notes, then trial counsel could not be found constitutionally ineffective. We have previously found that the trial court did not err by admitting this

evidence and, therefore, overrule Delapaz's fourth issue.

### IV. *Holding*

The judgment of the trial court is affirmed.