In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00199-CR


______________________________




NATHANIEL D. LOLLIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21530




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 In the course of essentially weekly counseling sessions occurring over a period of
approximately three and one-half months during the middle of 2006, three-year-old A.T. told
licensed professional counselor Reba Clark that Nathaniel D. Lollis "hurt her," "touched her in the
private parts of her body," "broke her arm," and "mushed her like a nake [sic]" (the last act
apparently accomplished with his foot). During those sessions, A.T.'s two older brothers, C.T. and
J.J.T., also made comments to Clark that they, too, had received abuse from Lollis. Lollis pled guilty
to intentionally or knowingly causing serious bodily injury to A.T. by hitting her head with his hand
and kicking her abdomen with his foot, an assault that occurred in September 2005. This appeal
arises out of the punishment phase of trial at which a Fannin County jury made a deadly weapon
finding--that, during the assault on A.T., Lollis used or exhibited a deadly weapon (his foot)--and
assessed Lollis' punishment at ninety-nine years' imprisonment. In two points of error, Lollis asserts
the trial court erred in admitting Clark's testimony recounting the outcry statements of A.T. and her
two brothers, notwithstanding the children's failure to testify or otherwise be available to be cross-examined, and in not granting a mistrial after A.T.'s maternal grandmother testified that A.T.'s
mother was given drugs by Lollis.

 We affirm the trial court's judgment because we hold (1) the children's statements to Clark
were nontestimonial, and (2) the trial court did not abuse its discretion in denying a mistrial.

(1) The Children's Statements to Clark Were Nontestimonial

 Lollis claims that the children's hearsay statements to Clark were admitted in violation of his
constitutional right to confront the children. Testimonial hearsay statements of a person who does
not appear at a defendant's trial are inadmissible unless that person was unavailable to testify and the
defendant had a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 68
(2004).

 Faced with a Crawford challenge, (1) we must determine whether the statements at issue are
testimonial or nontestimonial in nature. Id.; Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003). We review Crawford issues de novo. Wall v. State, 184 S.W.3d 730, 742 (Tex. Crim. App.
2006); Delapaz v. State, No. 11-06-00146-CR, 2007 Tex. App. LEXIS 4614, at *5-6 (Tex.
App.--Eastland June 14, 2007, no pet.); see Lilly v. Virginia, 527 U.S. 116, 137 (1999). Our
determination whether a statement is "testimonial" uses the standard of an objectively reasonable
declarant standing in the shoes of the actual declarant. Wall, 184 S.W.3d at 742-43.

 The Confrontation Clause of the United States Constitution applies to witnesses who "bear
testimony," that is "typically '[a] solemn declaration or affirmation made for the purpose of
establishing or proving some fact.'" Crawford, 541 U.S. at 51. Although the Crawford opinion does
not  provide  a  comprehensive  definition  of  ''testimonial,''  it  does  indicate  that  the  term  covers
''ex parte in-court testimony or its functional equivalent . . . extrajudicial statements contained in
formalized testimonial materials'' such as ''prior testimony at a preliminary hearing, before a grand
jury, or at former trial; and . . . police interrogations.'' Id. at 52. The timing, purpose, and setting of
a challenged statement can be relevant considerations when determining whether the statement's
primary purpose is testimonial. See Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 2273
(2006).

 Statements are nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the interrogation is
to enable police assistance to meet an ongoing emergency. They are testimonial
when the circumstances objectively indicate that there is no such ongoing emergency,
and that the primary purpose of the interrogation is to establish or prove past events
potentially relevant to later criminal prosecution.

Id. While it is clear that nonemergency police interrogations of normal adults ordinarily (2) produce
testimonial statements, the appropriate test when classifying statements such as have been challenged
here--statements made by young children, not in response to police interrogation--is less clear. (3)

 A discernible pattern has developed in cases evaluating statements made not in actual police
interrogations, but in a variety of other situations, involving potentially mixed motivations, that,
when a forensic or investigatory motive predominates, the resulting statements are testimonial; when
therapeutic or healing motive predominates, statements are not testimonial. See, e.g., United States
v. Peneaux, 432 F.3d 882, 896 (8th Cir. 2005) (child victim's statements to treating physician and
to foster parent paid by State not testimonial; absence of forensic interview noted); State v. Vaught,
682 N.W.2d 284, 291-92 (Neb. 2004) (statement not testimonial when made to physician rendering
medical services, not investigating). Compare State v. Snowden, 867 A.2d 314, 330 (Md. 2005)
(statement testimonial when made to social worker working with police in focused effort to obtain
statement; therapeutic motivation present but subordinate to investigatory motivation).

 Various factors have been used in determining whether the primary purpose of a statement
was to get or give testimony or to accomplish some other purpose. The following factors are
illustrative of the inquiry, but not exhaustive:

 (A) whether the statement was made in a formal and structured setting; (4)

 (B) the purpose of the interrogator; (5)

 (C) whether the statement was spontaneous (e.g., "plea for assistance") or elicited by
others; (6)

 (D) whether the police or the declarant initiated the conversation; (7)

 (E) the sophistication and maturity of the declarant; (8)

 (F) whether the declarant was a victim or an observer; (9)

 (G) whether the statement was made to a uniformed police officer, a governmental agent,
or a friend or acquaintance; (10)

 (H) the degree to which law enforcement was involved in obtaining the statement; (11)

 (I) whether the statement involved more than a routine and objective cataloging of
unambiguous factual matters; (12) and

 (J) where the statements were made (i.e., the declarant's house, a squad car, or the police
station). (13)

 There is no evidence that the statements challenged by Lollis were made in any formal setting
or that Clark was actually asking questions that elicited the statements. Nothing suggests that Clark
engaged in any structured questioning or investigation such as police officers or detectives tend to
do after an emergency ceases. While evidence suggests that Clark likely initiated the conversations,
Clark testified that her purpose was therapeutic, that is, treatment of the children, not the
perpetuation of testimony. The three children made their statements to Clark in the context of
counseling over approximately three and one-half months of approximately weekly counseling
sessions. The children were unsophisticated and immature, and each was a victim within the context
of the statement each made. Here, the statements were made by very young children--A.T. was
three years old, and her brothers were five and seven, respectively--to Clark, a licensed professional
counselor and family therapist, in the course of treatment to deal with behavioral problems and abuse
issues. While one could portray Clark as an agent of government, she practices as a sole proprietor
and independent contractor, not as an employee of any agency. Her obligations were to provide
treatment to the children. She approached her counseling subjects to put them at ease and to befriend
them, in other words, to play the role of a friend rather than an imposing governmental figure. Clark
accomplished that counseling by using art activities (including their drawing pictures and using
figures), play therapy, the reading of books to or with the children, and various activities to make the
children feel comfortable and express their feelings. No evidence suggested that law enforcement
was involved in obtaining the statements. No evidence showed where the statements were made,
but the evidence suggests it was in a comfortable environment; one statement was made while on
a sofa. But see People v. Vigil, 104 P.3d 258, 262-63 (Colo. Ct. App. 2004) (child's videotaped
statement to officer, although in relaxed setting, testimonial). Clark specifically connected the outcry
statements to the children's treatment. 

 The evidence suggests that Clark's regular counseling sessions with these three children were
intended primarily as therapy to assist the children in recovering from abusive experiences. The
alternative reading--that the sessions constituted a long and single-minded effort by the State to
obtain hearsay testimony--seems strained and is contrary to the evidence. We conclude, as
apparently did the trial court, that, from the standpoint of either Clark or the State, this relationship
was primarily one of counseling rather than one of trial preparation. Also, there is no evidence that,
from the perspective of the children, the ongoing relationship with Clark was anything but
counseling. And that is the proper perspective from which we view the context of the statements. 
See Wall, 184 S.W.3d at 742-43.

 These statements were made in a context analogous to that involved in a recent case decided
by our sister court of appeals in Eastland, in which a very young child made outcry statements to a
social worker and hospital staff member concerning abuse. See Delapaz, 2007 Tex. App. LEXIS
4614, at *3-4 (statements nontestimonial). A young child's statements made to her father shortly
after a murder were held nontestimonial. See Wilson, 195 S.W.3d at 203. On the other hand,
statements by young children can be testimonial if given in response to investigatory questions from
an officer or investigator. See Rangel v. State, 199 S.W.3d 523, 532-37 (Tex. App.--Fort Worth
2006, pet. granted) (questioning of four year old by Child Protective Services investigator;
testimonial); see also Morrison v. State, No. 2-05-443-CR, 2007 Tex. App. LEXIS 1529, at *14-15
(Tex. App.--Fort Worth Mar. 1, 2007, no pet.) (mem. op., not designated for publication) (young
child's spontaneous utterances of sexual assault to sexual assault nurse examiner during course of
sexual assault medical examination held nontestimonial).

 In arguing that the three children's statements to Clark were testimonial, Lollis relies on two
principal facts: State referrals of counseling cases to Clark account for a large percentage of her
income, and there was no emergency at the time the children made their statements to Clark. Our
analysis leads us to conclude that those facts are not controlling here and that the children's
statements to Clark were nontestimonial.

 Clark's State Connections. The evidence showed that the Texas Department of Child
Protective Services (CPS) referred A.T. to Clark for counseling and that Clark received seventy
percent of her cases from CPS referrals, earning fifty percent of her income from such referrals. 
While those facts could be considered by a fact-finder in determining the purpose or purposes
involved in Clark's sessions with the children, those facts alone should not control. The factor
controlling whether a statement is testimonial is not whether it was uttered to, or even solicited by,
a state agent, of whatever sort, but whether the primary purpose was to get or give testimony or its
functional equivalent. See Davis, 126 S.Ct. at 2273; Crawford, 541 U.S. at 51. While Clark
contracts with CPS regularly and CPS referrals figure significantly into her income, that does not
suggest that the primary purpose of the children's statements to her was testimonial.

 Lack of Emergency. The absence of an emergency has been a telling factor in post-Crawford
cases dealing with statements elicited by police interrogations. When police officers interrogate
someone, under circumstances suggesting no pending emergency or danger, the cases have found
those interrogations to be conducted pursuant to the investigative purposes of the police. See Davis,
126  S.Ct.  at  2273;  Davis  v.  State,  203  S.W.3d  845,  849  (Tex.  Crim.  App.  2006);  Mason
v. State, No. 05-04-00451-CR, 2007 Tex. App. LEXIS 4592 (Tex. App.--Dallas June 13, 2007, no
pet.); Lagunas, 187 S.W.3d at 517. Here, Clark was not acting as a police officer, and her
counseling with the children was not the functional equivalent of police interrogation. And, while
no emergency factored into the statements, the absence of an emergency does not, alone, make the
statements testimonial.

 The children's statements to Clark were nontestimonial and, thus, did not violate Lollis' right
of confrontation. (14) We overrule this point of error.

(2) The Trial Court Did Not Abuse Its Discretion in Denying a Mistrial

 Lollis also argues that the trial court erred in failing to grant his motion for a mistrial during
the testimony of Woodine Strawn, A.T.'s maternal grandmother. The State asked Strawn various
reasons why she disapproved of Lollis, who had a relationship with her daughter and grandchildren. 
Strawn responded that, on one occasion, her daughter came home "high" and told Strawn she had
been with Lollis. The trial court sustained a hearsay objection and instructed the jury to disregard
the witness' statement about what some other person said. When the State then asked Strawn what
happened next, she recounted that she had then had an argument with her daughter and that the
daughter had reported that Lollis had given her some drugs. Lollis' objection based on hearsay and
lack of personal knowledge was sustained, but his motion for a mistrial was denied. Lollis then
asked for an instruction to disregard, and the trial court instructed the jury to disregard Strawn's last
statement.

 We review a trial court's denial of a mistrial under an abuse of discretion standard. Trevino
v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999). Mistrial is an extreme remedy for prejudicial
events occurring during trial. Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). A
grant of a motion for mistrial should be reserved for those rare cases in which an objection could not
have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event
at trial, that is, where an instruction would not enable the jury to continue the trial fairly. Young v.
State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).

 An error in asking an improper question or in admitting improper testimony may be
generally cured or rendered harmless by a withdrawal of such testimony and an
instruction to disregard the same except in extreme cases where it appears that the
question or evidence is clearly calculated to inflame the minds of the jury and is of
such character as to suggest the impossibility of withdrawing the impression
produced on their minds.

Lopez v. State, 630 S.W.2d 936, 938 (Tex. Crim. App. 1982) (quoting Carey v. State, 537 S.W.2d
757, 759 (Tex. Crim. App. 1976)); see Furtick v. State, 592 S.W.2d 616 (Tex. Crim. App. 1980).

 Strawn's statement was brief and was not specifically solicited by the State. As requested by
Lollis, the trial court instructed the jury to disregard it. We see no reason why that response did not
take care of the problem. We do not find this statement to be such that an instruction to disregard
would be ineffectual. The trial court did not abuse its discretion by overruling the motion for a
mistrial. We overrule this point of error.

 We affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 20, 2007

Date Decided: August 10, 2007


Publish
1. The State asserts Lollis failed to preserve Crawford error by not objecting as promptly as
he could have. We disagree. Before the hearsay from each of the three children was recounted by
Clark, Lollis made timely and clear objections. Lollis also obtained from the trial court a continuing
objection to such testimony as to each of the three children. The issue was preserved.
2. Some situations may not be properly characterized as "emergency" situations, but can
produce statements which, due to the immediacy or riskiness of the situation, are not deemed
testimonial. See Vinson v. State, 221 S.W.3d 256, 267 (Tex. App.--Houston [1st Dist.] 2006, pet.
granted) (statements while police sorted out domestic violence situation, in presence of victim and
assailant).
3. While we recognize that the United States Supreme Court has not yet set out a
comprehensive test for whether a statement is testimonial, the test applied by Davis--i.e., the
principal purpose of the interrogation--appears to be both limited to an actual interrogation and
subject to inherent ambiguity in analysis. See Davis, 126 S.Ct. at 2280 (Thomas, J., concurring in
part and dissenting in part) (pointing out ambiguity in standard). An interrogation does not have a
purpose except for the purposes assigned to it by the participants. Each participant may have a
different purpose or even multiple purposes, and it may prove very difficult to deduce the primary
purpose of the interrogation. While a court should be able to determine a primary purpose for any
particular participant, deducing the overall primary purpose of the interrogation is fraught with
challenges. Regardless, the phrase was repeatedly used in Davis. See id. at 2273-74. Fortunately,
the case before us does not require us to resolve that standard. In this opinion, we intentionally use
the phrase "the primary purpose of the statement" to maintain that ambiguity created by the United
States Supreme Court, while hoping to further the dialogue.
4. "We do not dispute that formality is indeed essential to testimonial utterance." Davis, 126
S.Ct. at 2278. Crawford gives some importance to the formal nature or quality of the interaction
during which the challenged statement is uttered. The United States Supreme Court held "the
principal evil at which the confrontation clause was directed was the civil-law mode of criminal
procedure, and particularly its use of ex parte examinations as evidence against the accused." 
Crawford, 541 U.S. at 50. The Court analyzed historical ex parte examination practices and the
original intent of the Confrontation Clause. As the United States Supreme Court emphasized, the
Confrontation Clause "is a procedural rather than a substantive guarantee." Id. at 61. Thus, if the
nature of the interaction possesses a sufficiently formal quality such that it is the functional
equivalent of ex parte in-court testimony, the statement is testimonial. See also State v. Scacchetti,
711 N.W.2d 508, 516 (Minn. 2006). 
5. Scacchetti, 711 N.W.2d at 516; see Franklin v. State, No. SC04-1267, 2007 Fla. LEXIS
1107, at *70 (Fla. June 21, 2007) (Cantero, J., concurring); United States v. Gardinier, 65 M.J. 60
(C.A.A.F. 2007).
6. Lagunas v. State, 187 S.W.3d 503, 517 (Tex. App.--Austin 2005, no pet.); see Franklin,
2007 Fla. LEXIS 1107, at *70; Gardinier, 65 M.J. at 60; Ruth v. State, 167 S.W.3d 560, 568-70
(Tex. App.--Houston [14th Dist.] 2005, pet ref'd). We note the United States Supreme Court has
held the same analysis applies to statements that are volunteered rather than those elicited by
interrogation. Davis, 126 S.Ct. at 2284. 
7. Scacchetti, 711 N.W.2d at 516; Ruth, 167 S.W.3d at 569.
8. See Lagunas, 187 S.W.3d at 517 ("a reasonable 51-year-old declarant like Ford would have
known her accusations made to a uniformed police officer would be passed on to the prosecutorial
authorities to be used against appellant").
9. See Scacchetti, 711 N.W.2d at 516.
10. See Franklin, 2007 Fla. LEXIS 1107, at *70; Lagunas, 187 S.W.3d at 517.
11. See Lagunas, 187 S.W.3d at 518. Many different degrees of connection to the State are
possible. For example, one can list roles performed by people to whom statements might be made,
ranging from likely to produce a testimonial statement to unlikely to produce such a statement: police
officers or other law enforcement officers or investigators, Child Protective Services investigators,
sexual assault nurse examiners, 9-1-1 operators, mental or physical health practitioners, and friends
and family of the declarant. See, e.g., Wilson v. State, 195 S.W.3d 193, 203 (Tex. App.--San
Antonio 2006, no pet.) (excited utterance to father, in presence of officer, not testimonial).
12. See Gardinier, 65 M.J. at 60. 
13. See id. at 60.
14. Nontestimonial statements may still be governed by Ohio v. Roberts, 448 U.S. 56 (1980). 
See Walter v. State, 209 S.W.3d 722, 729 (Tex. App.--Texarkana 2006, pet. granted); Wiggins v.
State, 152 S.W.3d 656, 659-60 (Tex. App.--Texarkana 2004, pet. ref'd); see also Davis v. State, 169
S.W.3d 660, 668 (Tex. App.--Austin 2005), aff'd, 203 S.W.3d 845 (Tex. Crim. App. 2006) ("The
Roberts line of cases seem to be alive and well as to nontestimonial hearsay."). Because Lollis does
not argue this point beyond the Crawford issues, we need not address any impact Roberts might have
had on this case.



.%20Lloyd%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-065-CV%20Martineau%20v.%20Lloyd%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00065-CV

                                                ______________________________

 

 

      DAVID T. MARTINEAU, D/B/A HOP-MAR ENERGY, L.P.,
Appellant

 

                                                                V.

 

 GEORGE LLOYD, RANDALL W. LLOYD, AND JUSTIN LLOYD, Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 188th
Judicial District Court

                                                             Gregg County, Texas

                                                       Trial Court
No. 2008-2337-A

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Appellant,
David T. Martineau, d/b/a Hop-Mar Energy, L.P., and Appellees, George Lloyd,
Randall W. Lloyd, and Justin Lloyd, have filed with this Court a joint motion
to dismiss the pending appeal in this matter and remand the cause to the trial
court.  The parties represent to this
Court they have reached a full and final settlement.  In such a case, no real controversy exists,
and in the absence of a controversy, the appeal is moot.  

            We grant the
motion.  We set aside, without regard to
the merits, the judgment of the trial court and remand the case to the trial
court for rendition of judgment in accordance with the agreement.  See
Tex. R. App. P. 42.1(a)(2)(B).

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          April
11, 2011 

Date Decided:             April
12, 2011