UNITED STATES, Appellee,

v.

**Andrea P. HARVEY, Sergeant U.S. Air Force, Appellant.**

No. 67,706.
CMR No. 28770.

U.S. Court of Military Appeals.

Argued Jan. 5, 1993.
Decided June 25, 1993.

For Appellant: *Major Mary C. Yastishock* (argued); *Colonel Jeffrey R. Owens* and *Major Marilyn A. Gordon* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Captain David Wesley* (argued); *Lieutenant Colonel Brenda J. Hollis* and *Captain Morris D. Davis* (on brief); *Colonel Richard L. Purdon* and *Lieutenant Colonel Jeffery T. Infelise.*

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was convicted, contrary to her pleas, of wrongfully using and distributing cocaine and wrongfully endeavoring to impede an investigation, in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 USC §§ 912a and 934, respectively. The convening authority approved her sentence of a dishonorable discharge, confinement for 15 months, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed. 33 MJ 822 (1991).

We granted review of the following issue:

WHETHER THE MILITARY JUDGE DENIED APPELLANT MILITARY DUE PROCESS WHEN HE FAILED TO SUPPRESS APPELLANT'S STATEMENTS TO A GOVERNMENT AGENT WHO DELIBERATELY, REPEATEDLY, AND SYSTEMATICALLY REINITIATED A SERIES OF INTERROGATIONS, WITHOUT APPELLANT'S COUNSEL BEING PRESENT, AFTER APPELLANT REQUESTED AND CONSULTED COUNSEL FOLLOWING AN AFOSI INTERROGATION.

This issue was further refined before this Court by appellant in her briefs and oral argument as violations of her Sixth Amendment right to counsel; her Fifth Amendment rights, including the right to counsel and the right against self-incrimination; *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and Article 31(b), UCMJ, 10 USC § 831(b).

## FACTS

On January 30, 1990, Airman Lorne Lopez was interviewed by Office of Special Investigations (OSI) agents about his testing positive for cocaine. After being advised of his rights, Airman Lopez admitted to using cocaine on December 22, 1989, and said that his source of the cocaine was Airman Jennifer O'Brien. The following day Airman O'Brien was interviewed and said that she purchased this cocaine earlier from appellant, her supervisor. Airman O'Brien also stated that she had used cocaine with appellant several times and appellant had assisted her in purchasing cocaine. On the same day OSI agents interviewed appellant, who invoked her right to counsel after appropriate warnings. On February 1, 1990, appellant telephoned Airman O'Brien several times asking to meet. Airman O'Brien reported these conversations to her first sergeant. The first sergeant notified the OSI, and after getting clearance from O'Brien's defense counsel, the base staff judge advocate, and OSI district headquarters, they agreed to wire O'Brien with a hidden transmitter for her meeting with appellant. The first meeting occurred that afternoon near the gymnasium, but the transmitter malfunctioned. During the meeting O'Brien did not mention drugs. On February 2, 1990, appellant again telephoned O'Brien and arranged for a noon meeting. Airman O'Brien was again equipped with a recorder and transmitter. She was instructed not to broach the subject of drugs unless it was initiated by appellant. O'Brien told appellant that Airman Lopez had tested positive for co-

caine on a urinalysis test and had told the OSI he had used cocaine with O'Brien. Another meeting was set up the same day at which time Airman O'Brien admitted implicating appellant to the OSI. Appellant then attempted to convince Airman O'Brien to retract her earlier statement to the OSI and to say that she lied about appellant's involvement.

## THE SIXTH AMENDMENT RIGHT TO COUNSEL

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to the assistance of counsel for his defense." In *Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the Supreme Court indicated that an individual is not entitled to a lawyer at a lineup until the "initiation of adversary judicial criminal proceedings." While Chief Justice Burger seemed to indicate this initiation occurs only when formal charges have been made against the defendant, Justice Stewart's plurality opinion suggests that this right accrues at the time of a "formal charge, preliminary hearing, indictment, information, or arraignment." *Compare* 406 U.S. at 691, 92 S.Ct. at 1883 *with* 406 U.S. at 689, 92 S.Ct. at 1882. Likewise, in *United States v. Wattenbarger*, 21 MJ 41, 43 (CMA 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986), Judge Cox for the majority set forth the general proposition: "In the military, this Sixth–Amendment right to counsel does not attach until preferral of charges." Because of the unique procedural rules in the military, *e.g.*, psychiatric examinations and pretrial confinement (*cf. United States v. Jordan*, 35 MJ 856 (NMCMR), *returned for further consideration*, 36 MJ 381 (CMA 1992)), we will examine *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and its progeny to determine when the Sixth Amendment right attaches. *See also* Mil.R.Evid. 305(c),(d), and (e), Manual for Courts–Martial, United States, 1984.

In *Massiah v. United States, supra*, defendant was indicted for federal drug

charges, retained counsel, pleaded not guilty, and was released on bail. Unbeknownst to Massiah, an indicted co-conspirator agreed to cooperate with the Government. The co-conspirator had a radio transmitter in his car and invited Massiah to discuss the pending case. During this conversation Massiah made damaging admissions which were overheard by federal agents who later testified at Massiah's trial. The Court indicated that "secret interrogation of the defendant ... after ... indictment" was outlawed. 377 U.S. at 205, 84 S.Ct. at 1202.

*Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977), stated: "[T]he right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"

█ While the investigation in this case had focused on appellant, focus by itself does not ripen into a Sixth Amendment right to counsel. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). We hold that under the facts of this case there was no violation of appellant's Sixth Amendment right to counsel because charges had not been preferred against her. This does not mean the Government has carte blanche as to the use of informers. In *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court held that a post-indictment statement obtained from a jailed defendant by an informer in the same cellblock violated *Massiah*. *See also Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). But *Massiah* is not violated where the informer merely listens and does not question the defendant. *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).

### FIFTH AMENDMENT RIGHT TO COUNSEL

█ Next appellant alleges that a violation of the Self–Incrimination Clause as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and a violation of the right to counsel as set forth in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and its progeny occurred. In both *Miranda* and *Edwards*, a custodial interrogation is necessary to prove a violation. *Miranda* defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Here, the conversations were initiated by appellant herself. She was not deprived in any way of her freedom of movement; indeed, the conversations took place at sites appellant selected. For these reasons we conclude that there was no violation of *Edwards* or *Miranda*.

Under different circumstances where there is custodial interrogation along with invocation of the right to remain silent and the right to counsel, this cautionary observation from *Illinois v. Perkins*, 496 U.S. 292, 300 n. *, 110 S.Ct. 2394, 2399 n. *, 110 L.Ed.2d 243 (1990) (Brennan, J., concurring in the judgment), is important:

> Nothing in the Court's opinion suggests that, had [the accused] previously invoked his Fifth Amendment right to counsel or right to silence, his statements would be admissible. If [he] had invoked either right, the inquiry would focus on whether he subsequently waived the particular right. As the Court made clear in *Moran v. Burbine*, 475 U.S. 412 [106 S.Ct. 1135, 89 L.Ed.2d 410], ... (1986), the waiver of *Miranda* rights "must [be] voluntary in the sense that it [must be] the product of a free and deliberate choice rather than *intimidation, coercion or deception*." (Emphasis added.) Since [the accused] was in custody on an unrelated charge when he was questioned, he may be able to challenge the admission of these statements if he previously had invoked his *Miranda* rights with respect to that charge. Similarly, if

[he] had been formally charged on the unrelated charge and had invoked his Sixth Amendment right to counsel, he may have a Sixth Amendment challenge to the admissibility of these statements. (Citations omitted.)

### ARTICLE 31

Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Article 31(b) applies when a "person subject to this chapter [the Uniform Code of Military Justice] ... interrogate[s], or request[s] any statement from, an accused or a person suspected of an offense." Article 31(b) must not be read literally. According to *United States v. Fisher*, 21 USCMA 223, 225, 44 CMR 277, 279 (1972):

A medical doctor who questions an individual solely to obtain information upon which to predicate a diagnosis, so that he can prescribe appropriate medical treatment or care for the individual, is not performing an investigative or disciplinary function; neither is he engaged in perfecting a criminal case against the individual. His questioning of the accused is not, therefore, within the reach of Article 31.

*See United States v. Pittman*, 36 MJ 404 (CMA 1993) (Article 31(b) held not applicable to noncommissioned officer who was escorting the accused and asked questions based on personal curiosity); *United States v. Loukas*, 29 MJ 385 (CMA 1990).

Our cases have set forth the rationale for Article 31(b) as follows:

Careful consideration of the history of the requirement of warning, compels a conclusion that its purpose is to avoid impairment of the constitutional guarantee against compulsory self incrimination. Because of the effect of superior rank or official position upon one subject to military law, the mere asking of a question under certain circumstances is the equivalent of a command.

*United States v. Gibson*, 3 USCMA 746, 752, 14 CMR 164, 170 (1954). We further explained in a later case:

Conditioned to obey, a serviceperson asked for a statement about an offense may feel himself to be under a special obligation to make such a statement. Moreover, he may be especially amenable to saying what he thinks his military superior wants him to say—whether it is true or not. Thus, the serviceperson needs the reminder required under Article 31 to the effect that he need not be a witness against himself.

*United States v. Armstrong*, 9 MJ 374, 378 (CMA 1980).

Applying this rationale, this Court stated in *United States v. Duga*, 10 MJ 206, 210 (CMA 1981):

[T]he Article applies only to situations in which, because of military rank, duty, or other similar relationship, there might be subtle pressure on a suspect to respond to an inquiry. Accordingly, in each case it is necessary to determine whether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation. Unless both prerequisites are met, Article 31(b) does not apply.

(Citations omitted.)

■ In *Gibson* the Court held that Article 31(b) did not apply when a fellow prisoner questioned Gibson in pretrial confinement. The Court indicated that such questioning was not calculated to result in untrue statements. 3 USCMA at 753, 14 CMR at 171. In this case O'Brien was subject to the Code and was acting as an agent of the OSI. But both meetings were requested and arranged by appellant who was O'Brien's supervisor and would not

have been perceived as an inquiry by an individual acting in an official capacity or as a law enforcement official to obtain a confession from a suspect. As in *Gibson* this questioning created neither a coercive atmosphere nor an atmosphere where appellant thought she was required to cooperate. *See also United States v. Kirby,* 8 MJ 8 (CMA 1979).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.