UNITED STATES, Appellee

v.

Gregory J. PRICE, Staff Sergeant
U.S. Air Force, Appellant.

No. 95–0147.
CMR No. 30445.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 2, 1995.

Decided Sept. 6, 1996.

Certiorari Denied Jan. 13, 1997.

See 117 S.Ct. 740.

For Appellant: *Captain Michael L. McIntyre* (argued); *Colonel Jay L. Cohen* (on brief); *Lieutenant Colonel Joseph L. Heimann.*

For Appellee: *Major Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on brief); *Lieutenant Colonel Michael J. Breslin.*

*Opinion of the Court*

COX, Chief Judge:

Appellant was tried by general court-martial with members[1] at March Air Force Base, California. Contrary to his pleas, he was found guilty[2] of wrongful use of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 6 months, and reduction to pay grade E–4. The convening

---

1. Before the court below, appellate defense counsel stated that this case was tried by judge alone. The Government "accepted" this statement. The opinion below correctly stated in its very first word that this was a trial by members.

In its supplement and its final brief, appellate defense counsel stated this case was tried by judge alone. The Government again "accepted" this statement in its letter answer and its Answer to Final Brief.

The record reflects that the "PRES" announced the findings (R. 414) and the sentence (R. 450).

Counsel are reminded that the purpose of pleadings is to assist the Court. Accuracy in *every* respect is an essential aspect of a helpful

brief. The existence of patent errors significantly diminishes the effectiveness of the brief. One purpose of an adversary proceeding is to prevent inaccurate or misleading statements from being before this Court.

2. The military judge instructed the members that there was no need to vote on the Charge, regardless of the vote on the specification. (R. 413) This is contrary to RCM 921(c)(1) and (c)(6), Manual for Courts–Martial, United States (1995 ed.). Those provisions have not been changed since 1984.

Military judges are not free to pick and choose which of the President's procedural rules to follow.

authority approved the sentence. The Court of Military Review[3] affirmed.

We granted review of the following issue:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED IN FINDING THAT SSGT MOORE WAS NOT ACTING IN AN OFFICIAL CAPACITY WHEN HE QUESTIONED APPELLANT AND THAT THEREFORE STATEMENTS INDUCED FROM APPELLANT BY SSGT MOORE WITHOUT THE READING OF ARTICLE 31 RIGHTS OR NOTIFICATION OF APPELLANT'S DEFENSE COUNSEL, WERE INADMISSIBLE.

We hold that the military judge did not err in denying the defense motion to suppress.

After taking evidence and prior to ruling on the defense motion, the military judge made extensive findings of fact. Her findings were specifically adopted by the Court of Military Review. Unpub. op at 2. Based upon our review of the record and the evidence, we too conclude that the military judge's findings were correct and adopt them to resolve the granted issue. *United States v. French*, 38 MJ 420 (CMA 1993); *United States v. Davis*, 36 MJ 337 (CMA 1993).

The facts, in brief, are as follows:

On July 27, 1992, appellant provided a urine sample as part of random urinalysis testing. At that time, appellant and Staff Sergeant (SSgt) Moore both worked in the pharmacy section of the 22d Medical Group at March AFB. SSgt Moore "technically worked for" appellant. "Sometime in early August 1992," SSgt Moore "heard, or was told" that appellant was "using drugs." He passed this information on to the pharmacy superintendent and later made a report to the Office of Special Investigations (OSI) when Special Agent (SA) Riter took him to lunch where they discussed SSgt Moore's concerns about appellant's drug use. SA Riter informed SSgt Moore that they did not have an active case on appellant and that SSgt Moore's participation by providing information "was voluntary." They both signed a Declaration of Agreement that SSgt Moore was not an OSI agent, and SSgt Moore was advised "that if he committed a criminal act, the OSI would investigate" him and that he must act "as the OSI told him to do." SA Riter then asked SSgt Moore to get some details about appellant's vehicle and "to pass on" any information he got from a named civilian employee about appellant; "he did not tell" SSgt Moore "to obtain statements from" appellant. Also at this meeting, SSgt Moore expressed a desire "to become an OSI agent," and SA Riter told him what the requirements for such a job would be. Additional luncheon meetings took place between SSgt Moore and agents of the OSI, and SSgt Moore "was given some type of training concerning drugs during one" of these meetings.

Appellant's urine sample tested positive for methamphetamine. The OSI was notified of the results, and they "called" appellant "in." After having been advised of his rights under Article 31, UCMJ, 10 USC § 831, appellant waived his rights and made a written statement; then he requested counsel. Appellant was "removed" from his job at the pharmacy "and assigned elsewhere."

The two OSI agents in this case testified that they "believed" they had advised SSgt Moore that appellant had asked to see an attorney. Later, in September 1992, SSgt Moore had three conversations with appellant, and the statements appellant made to him during these discussions were reported to the OSI agents. Those statements were the focus of the defense motion to suppress. Trial defense counsel asserted that SSgt Moore was obligated to advise appellant of his Article 31 rights and to notify counsel of the scheduled interview. Despite the fact that the military judge found SSgt Moore's testimony about these conversations to be unclear and "confusing," she found that they were "casual" exchanges between co-workers. After the last of the three meetings, SSgt Moore indicated to the OSI agents that appellant would claim that the urinalysis was positive because he was using a prescription drug. One of the OSI agents then asked SSgt Moore to "check" appellant's medical

---

**3.** *See* 41 MJ 213, 229 n. * (1994).

records to see if that was the case. The military judge found that the agents never "instruct[ed] SSgt Moore to initiate any conversations with" or interrogations of appellant and that they did not "provide him questions to ask" appellant. She further found that SSgt Moore was motivated by "his dislike of drugs in the military" and "his very strong desire to become an OSI agent"; however, his "conversations with" appellant "were informal and outside the scope of any military relationship."

On the basis of the foregoing facts, the military judge ruled that SSgt Moore "was a person subject to" the Uniform Code of Military Justice who "suspected" that appellant was wrongfully using drugs. But she further concluded that SSgt Moore had not been "acting in an official law enforcement or disciplinary capacity"; that "a reasonable man" in appellant's "position would not perceive" that SSgt Moore "was acting in an official law enforcement or disciplinary capacity"; SSgt Moore "was not required to advise" appellant "of his rights under Article 31(b)"; and that SSgt Moore had no obligation to notify counsel. We agree.

Appellant clearly was suspected of using drugs by SSgt Moore, a person subject to the UCMJ, when the two engaged in the three conversations that gave rise to the defense motion to suppress. *See United States v. Good*, 32 MJ 105, 108–09 (CMA 1991). However, standing alone, that fact does not invoke the warning requirements of Article 31(b).[4] Rather, as this Court held in *United States v. Duga*, 10 MJ 206, 210 (1981):

> Therefore, in light of Article 31(b)'s purpose and its legislative history, the Article applies only to situations in which, because of military rank, duty, or other similar relationship, there might be subtle pressure on a suspect to respond to an inquiry. *United States v. Gibson*, [3 USCMA 746, 14 CMR 164 (1954)]. Accordingly, in each case it is necessary to determine whether

(1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation. *United States v. Gibson, supra.* Unless both prerequisites are met, Article 31(b) does not apply.

*See also United States v. Loukas*, 29 MJ 385 (CMA 1990).

We recently examined this two-pronged test for the rights'-advisement requirement of Article 31(b) in *United States v. Harvey*, 37 MJ 140 (1993). There we held that the requirement was not triggered where a military member (O'Brien), acting as an agent for the OSI, agreed to use a hidden transmitter to allow law enforcement officials to monitor his conversations with Harvey. Holding that the accused's Fifth and Sixth Amendment rights to counsel and Article 31 warnings had not been violated, we observed the following:

> In this case O'Brien was subject to the Code and was acting as an agent of the OSI. But both meetings were requested and arranged by appellant who was O'Brien's supervisor and would not have been perceived as an inquiry by an individual acting in an official capacity or as a law enforcement official to obtain a confession from a suspect. As in *Gibson*, this questioning created neither a coercive atmosphere nor an atmosphere where appellant thought she was required to cooperate. *See also United States v. Kirby*, 8 MJ 8 (CMA 1979).

37 MJ at 143–44.

In the present case there are fewer factors warranting a conclusion that warnings were required than there were in *Harvey*. The operative in *Harvey* was clearly acting as an agent for law enforcement officials and, therefore, in an official capacity. Here the military judge found that SSgt Moore was

---

**4.** Article 31(b), Uniform Code of Military Justice, 10 USC § 831(b), provides the following:

(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the

accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

not so acting and that he went beyond what he was asked to do by the law enforcement officials. Even assuming arguendo that some specter of officiality had been imprinted on SSgt Moore's actions, the second prong of *United States v. Duga, supra,* clearly was not present in this case. It was appellant who was SSgt Moore's technical supervisor, not the other way around; the conversations were casual and took place in a work environment; there was no evidence that appellant was aware of SSgt Moore's involvement with the OSI; and the encounters between appellant and SSgt Moore took place under circumstances which gave no indication that appellant was coerced by some superior or disciplinary authority.[5] Thus, we hold that there was no violation of appellant's rights under Article 31, UCMJ, 10 USC § 831.

Turning to the obligation to notify counsel, we note that the military judge, apparently relying on the version of Mil.R.Evid. 305(e), Manual for Courts-Martial, United States, 1984, in existence at the time of trial (amended effective December 9, 1994), held that no duty to notify defense counsel existed "[s]ince Article 31(b) rights were not required." We likewise hold that no such notice was required. We note, however, that in *United States v. Harvey, supra,* the Court addressed the question of the possible implications of an accused's rights to counsel under the Fifth and Sixth Amendments, after he had requested and consulted with counsel,

when the person who elicited the incriminating responses was acting in an official capacity. Here we have upheld the military judge's holding that SSgt Moore was not acting in an official capacity, so such an inquiry would not be required. However, again assuming *arguendo* that there was a specter of officiality, we note that the conversations took place prior to preferral of the charge, so there was no Sixth Amendment right involved in this case. *United States v. Wattenbarger,* 21 MJ 41 (CMA 1985). Furthermore, appellant was not in custody during the period in question. Therefore, there was no violation of appellant's Fifth Amendment right to counsel.

The concerns expressed by the Supreme Court in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and by this Court in *United States v. McOmber,* 1 MJ 380 (1976), and *United States v. Applewhite,* 23 MJ 196 (1987), simply are not pertinent to this case. *United States v. Harvey, supra; see generally United States v. LeMasters,* 39 MJ 490 (CMA 1994).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges SULLIVAN, CRAWFORD, and GIERKE, and Senior Judge EVERETT concur.

---

5. We note that the military judge applied a reasonable-person standard in resolving this issue, relying on *United States v. Good,* 32 MJ 105, 108 n. 2 (CMA 1991). However, in view of the evidence in this case, we need not now decide if a subjective standard is more appropriate.