# UNITED STATES AIR FORCE
## COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39216**

————————————

### UNITED STATES
*Appellee*

**v.**

### Andre D. ALFORD
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 August 2018

————————————

*Military Judge:* Brendon K. Tukey.

*Approved sentence:* Bad-conduct discharge, a fine of $30,000.00, confinement for 8 months if the fine is not paid, reduction to E-4, and a reprimand. Sentence adjudged 30 September 2016 by GCM convened at Peterson Air Force Base, Colorado.

*For Appellant:* Major Jarett F. Merk, USAF; James D. Culp, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges HUYGEN and POSCH joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of willful dereliction of duty for failure to provide adequate

support for AA, his dependent daughter, larceny of military property (entitlement fraud), and false official statement (signing false official documents), in violation of Articles 92, 121, and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 921, 907.[1] The military judge sentenced Appellant to a bad-conduct discharge, a fine of $30,000.00, confinement for eight months if the fine is not paid, reduction to E-4, and a reprimand. The convening authority approved the sentence as adjudged.

Appellant raises four issues on appeal: (1) whether the military judge erred by admitting Appellant's statement made to a Defense Finance and Accounting Service (DFAS) employee; (2) whether Appellant's convictions for false official statement and larceny are legally and factually sufficient; (3) whether Appellant's conviction for dereliction of duty is legally and factually sufficient; and (4) whether Appellant received ineffective assistance of counsel. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's daughter, AA, was born in September 1998. AA's mother, FT, met Appellant in 1996 when they were both stationed at Little Rock Air Force Base (AFB), Arkansas. Appellant and FT never married but they continued to date after AA was born. Appellant left Little Rock AFB in 1999 and was assigned to a Military Entrance Processing Station (MEPS) in Dallas, Texas. While Appellant was stationed there, FT would regularly bring AA to Dallas to visit Appellant and members of Appellant's family who also resided in Dallas. In December 2002, FT separated from the United States Air Force. FT left

---

[1] The military judge found Appellant guilty of two of the three specifications of larceny (Specifications 2 and 3 of Charge II) and all four specifications of false official statement (Specifications 1–4 of the Additional Charge). Each of the false official statement specifications and the Additional Charge were dismissed by the military judge on the condition that the corresponding specification of larceny "survives post-trial appellate scrutiny." Military judges and military appellate courts have the inherent authority to order a conditional dismissal of a charge which becomes effective when direct review becomes final pursuant to Article 71(c), UCMJ, 10 U.S.C. § 871(c). *United States v. Stanley*, 60 M.J. 622, 630 (A.F. Ct. Crim. App. 2004), *rev. denied*, 60 M.J. 388 (C.A.A.F. 2004). We note the court-martial order (CMO) does not reflect the conditional dismissal of the Additional Charge. We order a corrected CMO.

Arkansas and, taking AA with her, moved to Ohio to live with her mother. Appellant visited FT and AA in Ohio in February 2003. This was the last time until Appellant's trial in September 2016 that Appellant saw FT or AA.

In June 2003, Appellant sent AA a box of clothes and toys. This was the last time Appellant sent money or personal items to FT for AA's benefit or otherwise provided AA support. Appellant had previously provided financial support through an allotment. In November 2003, FT informed Appellant by phone that she and AA had moved to Houston, Texas, and that FT was marrying another man. According to FT, Appellant stated he did not want anything further to do with her or AA, or words to that effect. FT also testified that neither she nor AA heard from Appellant or any member of his family after the November 2003 phone call.

Nearly eight years later, Appellant reported to Royal Air Force (RAF) Lakenheath, United Kingdom, in the fall of 2011. On 18 October 2011, Appellant signed and submitted to the finance office two forms: a Department of Defense Form 1561, Statement to Substantiate Payment of Family Separation Allowance (FSA), and an Air Force Form 594, Application and Authorization to Start, Stop, or Change Basic Allowance for Quarters (BAQ) or Dependency Determination. Even though well over eight years had passed since Appellant had last provided any support to AA or AA had been in Dallas with Appellant or his family, Appellant listed AA on the forms as a dependent for whom he provided financial support, claimed AA was in his custody or not in the legal custody of another, and asserted AA *lived* at an address in Dallas, Texas. As a result of Appellant's claims on the BAQ form, Appellant was paid $10,613 more than what he would have received between November 2011 and January 2014 but for his claim for BAQ for AA.[2]

In February 2014, Appellant departed RAF Lakenheath and reported to Osan Air Base (AB), Republic of Korea. On 12 February 2014, Appellant signed and submitted BAQ and FSA forms completed in substantially the same manner as the forms he submitted in the fall of 2011. Appellant again listed AA as a dependent for whom he provided financial support, claimed AA was in his custody or not in the legal custody of another, and asserted AA lived at an address in Dallas, Texas. On 9 April 2014, Appellant again signed and submitted BAQ forms with the same assertions as those he filed previously. As a result of Appellant's claims on these forms, Appellant received overseas housing allowance at the with-dependent rate and FSA totaling almost $23,000 while

---

[2] Appellant did not receive FSA at RAF Lakenheath because—even if the matters he asserted in the form were true—he was not entitled to receive FSA.

he was stationed at Osan AB. Appellant left Osan AB and arrived at his next assignment in Colorado in August 2015.

About one year earlier, in July 2014, MA, a DFAS military pay systems analyst conducting an audit, queried a data system to identify all Army and Air Force members serving on unaccompanied tours overseas and receiving a housing allowance for dependents in the continental United States (CONUS). In cases of a male military member claiming custody of a child, MA sought legal documentation to verify the custody claim.

When reviewing Appellant's record, MA noticed that Appellant was receiving a housing allowance for a dependent child's CONUS location and knew that, in order for Appellant to claim an allowance for the child, Appellant would have to have legal and physical custody of that child. MA found it unusual for someone who appeared to be on a third consecutive overseas tour to have custody of a child who lived in CONUS. As a result, MA opened an administrative inquiry that was forwarded to the finance office at Peterson AFB, Colorado. MA requested that Appellant be contacted to present legal documentation to substantiate Appellant's claims of custody of AA. MA was expecting Appellant had a court order for custody of AA because MA had reviewed a form signed by Appellant at Osan AB on 12 February 2014 with a block marked to indicate that Appellant claimed an allowance for AA. The block indicated that AA was Appellant's dependent and in his custody residing in Dallas, Texas. Adjacent to the marked block was a hand-written arrow pointing to the words "court order" in the block above.

Some months passed before MA was contacted by IR, a military pay specialist at Peterson AFB, about the age and status of MA's inquiry into Appellant's entitlements. As the inquiry had exceeded the time standard for closure and was negatively impacting IR's metrics, IR was keenly interested in closing the matter and convinced MA to participate in a teleconference with Appellant. MA's purpose for the teleconference was to secure documentation supporting Appellant's BAQ claim.

During the teleconference, Appellant made two statements that conflicted with documentation MA had retrieved from Appellant's personnel records. First, Appellant claimed that he had physical custody of AA while he was assigned to the MEPS in Dallas. MA had a copy of an insurance form that indicated AA resided near Little Rock, Arkansas, during that time. Second, Appellant claimed "my wife and child are still residing in Dallas, Texas, and they have not joined me yet [in Colorado]," or words to that effect. MA had a copy of a travel voucher filed by Appellant that claimed both AA and Appellant's current spouse had moved from Dallas, Texas, to Colorado Springs, Colorado. After this second statement of Appellant, MA concluded that Appellant was not

going to be able to produce the requested documentation. Because of the apparent inconsistencies between Appellant's statements during the teleconference, the insurance document, and the travel voucher, MA ended the teleconference and referred the matter to the Air Force Office of Special Investigations (AFOSI).

## II. DISCUSSION

### A. Article 31(b), UCMJ, Rights Advisement

On the grounds that MA and IR failed to advise Appellant of his rights pursuant to Article 31(b), UCMJ, 10 U.S.C. § 831(b), Appellant moved at trial to suppress statements made by Appellant to MA and IR during the teleconference. The military judge denied the motion to suppress, finding that MA and IR were not acting for disciplinary or prosecutorial purposes and had independent reasons for contacting Appellant. On appeal, Appellant argues that MA was "at least in substantive part, performing a law enforcement or other disciplinary investigation" and, therefore, violated Article 31(b) by failing to advise Appellant prior to questioning. We disagree.

We review a military judge's ruling on a motion to suppress for an abuse of discretion. *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014). "When there is a motion to suppress a statement on the ground that rights' warnings were not given, we review the military judge's findings of fact on a clearly-erroneous standard, and we review the conclusions of law de novo." *Id.* (quoting *United States v. Duga*, 10 M.J. 206, 209 (C.M.A. 1981)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." *Id.* (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)); *see also United States v. Flesher*, 73 M.J. 303 (C.A.A.F. 2014) (stating that an abuse of discretion occurs when a "military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law").

Article 31(b), UCMJ, provides:

> No person subject to this chapter [10 U.S.C. §§ 801 et. seq.] may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

10 U.S.C. § 831(b).

The United States Court of Appeals for the Armed Forces has held that Article 31(b) requires rights advisement if "(1) the person being interrogated is a suspect at the time of questioning, and (2) the person conducting the questioning is participating or could reasonably be considered to be participating in an official law enforcement or disciplinary investigation or inquiry." *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000); *see also Jones*, 73 M.J. at 361. We examine the totality of the circumstances to evaluate this issue. *United States v. Ramos*, 76 M.J. 372, 376 (C.A.A.F. 2017).

In ruling on the motion to suppress, the military judge made factual findings and legal conclusions. Appellant disagrees with the military judge's factual finding that MA was not acting for purposes of disciplinary action or criminal prosecution at the time of the teleconference with Appellant. The record, however, amply supports the military judge's factual findings and his legal conclusions. Whether MA was acting in an official law enforcement capacity requires "determining the scope of his authority as an agent of the military." *Jones*, 73 M.J. at 362; *see United States v. Cohen*, 63 M.J. 45, 51 (C.A.A.F. 2006) (considering the questioner's authorities and responsibilities); *see also United States v. Price*, 44 M.J. 430, 432 (C.A.A.F. 1996) (finding that the questioner "went beyond what he was asked to do by the law enforcement officials").

We reiterate what our predecessors articulated:

> Members of the accounting and finance office are not criminal investigators, and they do not exercise disciplinary authority over military members not assigned to their office. They have an independent responsibility to ascertain the facts necessary to make proper payments of pay and allowances to military members, and to collect amounts owed by members to the government.

*United States v. Guron*, 37 M.J 942, 947 (A.F.C.M.R. 1993), *remanded on other grounds*, 43 M.J. 373 (C.A.A.F. 1995) (mem.), *revised opinion aff'd*, 45 M.J. 12 (C.A.A.F. 1996) (mem.).

Similar to *Guron* where a military pay technician's inquiry into an appellant's entitlements resulted from a base-wide survey of entitlements and identification of a discrepancy in the appellant's personnel records, this case involves MA conducting an audit and identifying a need for documentation to substantiate Appellant's entitlements. MA had not been directed by law enforcement to question Appellant and investigate a suspected offense; instead MA sought to "ascertain the facts necessary to make proper payments of pay and allowances." *Id.* MA's decision to refer the matter to AFOSI *after* Appellant made statements inconsistent with the insurance and travel documents did not retroactively transform the purpose of his inquiry. IR's purpose was similarly

administrative and procedural in nature: it was metrics-driven. Examining the totality of the circumstances, we concur with the military judge that neither MA nor IR was acting for purposes of disciplinary action or criminal prosecution, and thus neither was required to give an Article 31(b), UCMJ, rights advisement when they spoke with Appellant. The military judge did not err in denying the motion to suppress.

## B. Legal and Factual Sufficiency

Appellant has challenged the legal and factual sufficiency of all of the findings of guilty. As to the larceny and false official statement offenses, Appellant asserts mistake of fact to negate the *mens rea* element of those offenses. As to the willful dereliction of duty for failure to provide adequate support to AA, Appellant argues that FT, by moving AA seven times in eight years, fatally frustrated Appellant's attempts to locate AA and provide her financial support. We are not persuaded by any of Appellant's arguments.

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)) (citations omitted) (internal quotation marks omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)), *aff'd,* 77 M.J. 289 (C.A.A.F. 2018). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). While we must find that the evidence was sufficient beyond a reasonable doubt, it "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000).

### 1. False Official Statements and Larceny at RAF Lakenheath

The offenses of Specifications 1 and 2 of the Additional Charge for false official statement and Specification 2 of Charge II for larceny occurred while Appellant was stationed at RAF Lakenheath. In order for Appellant to be found guilty of Specifications 1 and 2 of the Additional Charge, the Government was required to prove beyond a reasonable doubt the following: Appellant signed certain official documents, the FSA statement and the BAQ application; the

documents were false; Appellant knew the documents were false at the time he signed them; and the false documents were made with the intent to deceive.[3] As to the falsity of the documents, the Government was required to prove beyond a reasonable doubt that Appellant falsely claimed in the FSA statement his dependent was not in the legal custody of another person when he received military orders and that Appellant falsely claimed in the BAQ application AA was in his custody and he provided adequate support for her.

In order for Appellant to be found guilty of Specification 2 of Charge II, the Government was required to prove beyond a reasonable doubt the following: between on or about 3 November 2011 and on or about 29 January 2014, Appellant wrongfully obtained money, military property; the property was of a value of greater than $500.00; and the obtaining by Appellant was with the intent to permanently defraud another person of the use and benefit of the property.[4]

There is no dispute that Appellant signed an FSA form on 18 October 2011. At block 8 of this form are the words "I certify to the following facts" followed by statements that the signer of the document, by placing a mark in the applicable box preceding each statement, asserts as fact. Appellant checked the box next to the statement, "My dependent child was not in the legal custody of another person when I received my military orders." Appellant *had not seen or spoken to AA in eight years* when he made this statement nor had he provided any financial support to AA since June 2003. Appellant also knew that, other than trips and visits, AA had lived with FT and been in FT's physical custody for AA's entire life. Appellant's knowledge of the statement's falsity and his intent to deceive are further evidenced by Appellant's providing an address in Dallas, Texas, as AA's *current* address. Appellant affirmatively knew AA did not live at that address.

The evidence is equally clear that Appellant signed a BAQ form on 18 October 2011. At block 8 of the BAQ form Appellant checked boxes to state, "I claim BAQ for the dependent in my custody listed below: [AA]." Appellant again listed the Dallas, Texas, address as AA's current address. Notably, block 7 of the BAQ form includes boxes and blanks that can be checked and filled to permit a *non-custodial parent* to claim the amount of monthly financial support paid for dependent support and the legal basis for such monthly payments. Even though the words "non-custodial parent" accurately described Appellant's legal status with respect to AA, Appellant left block 7 blank. Appellant

---

[3] *Manual for Courts-Martial, United States* (*MCM*), pt. IV, ¶ 31(b) (2016).

[4] 2016 *MCM*, pt. IV, ¶ 46(b)(1).

did however certify at Part C of the BAQ form that he provides adequate support for AA and was aware that failure to adequately support AA would "result in stopping BAQ and recouping allowances paid for any prior period of nonsupport."

Through his statements in the documents, Appellant painted the false picture that he was the custodial parent of AA, he was providing monthly financial support to AA, and AA lived in Dallas, Texas. As a result of the false information in Appellant's claim for BAQ for AA, Appellant was paid $10,613 more between November 2011 and January 2014 than what Appellant would have received otherwise.

We find the evidence viewed in the light most favorable to the prosecution provided sufficient evidence for a reasonable factfinder to find beyond a reasonable doubt all the essential elements of each of the three offenses committed while Appellant was at RAF Lakenheath. Having conducted an independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt that Appellant made two false official statements on 18 October 2011 and stole military funds totaling over $10,000 while he was stationed at RAF Lakenheath.

### 2. False Official Statements and Larceny at Osan AB

In order for Appellant to be found guilty of Specifications 3 and 4 of the Additional Charge, the Government was required to prove beyond a reasonable doubt the following: at or near Osan AB, Appellant signed certain official documents; the documents were false; Appellant knew the documents were false at the time he signed them; and the false documents were made with the intent to deceive. The Government was also required to prove beyond a reasonable doubt that Appellant falsely claimed his dependent was not in the legal custody of another person when he received military orders and that Appellant falsely and repeatedly claimed AA was in his custody and he provided adequate support for her.

In order for Appellant to be found guilty of Specification 3 of Charge II, the Government was required to prove beyond a reasonable doubt the following: between on or about 7 February 2014 and on or about 2 February 2015 at or near Osan AB, Appellant wrongfully obtained money, military property; the property was of a value of greater than $500.00; and the obtaining by Appellant was with the intent to permanently defraud another person of the use and benefit of the property.

Other than changing the dates and location, Appellant falsely completed the FSA and BAQ forms at Osan AB as he had at RAF Lakenheath. We find the evidence viewed in the light most favorable to the prosecution provided sufficient evidence for a reasonable factfinder to find beyond a reasonable

doubt all the essential elements of each of the three offenses committed while Appellant was at Osan AB. Having conducted an independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt that Appellant made false official statements and stole military funds totaling almost $23,000 for FSA and BAQ to which he was not entitled while he was stationed at Osan AB.

### 3. Willful Dereliction of Duty at RAF Lakenheath and Osan AB

In order for Appellant to be found guilty of the sole specification of Charge I, the Government was required to prove beyond a reasonable doubt the following: Appellant had a duty to provide adequate support for AA; Appellant actually knew of the duty; and between on or about 31 March 2011 and on or about 2 February 2015 while at RAF Lakenheath and Osan AB, Appellant was willfully derelict in the performance of that duty by failing to provide adequate support.[5]

On each of the BAQ forms completed, signed, and submitted by Appellant, he falsely certified that he provided adequate support to AA and acknowledged that providing adequate support was a prerequisite for the claimed entitlement. Appellant received BAQ for AA but failed to provide contemporaneous financial support to AA. We find the evidence viewed in the light most favorable to the prosecution provided sufficient evidence for a reasonable factfinder to find beyond a reasonable doubt all the essential elements of the offense. Having conducted an independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt of Appellant's guilt.

## C. Effectiveness of Counsel

In the request for clemency to the convening authority, Appellant disclosed he was advised by his trial defense counsel not to testify and thus did not testify. Now on appeal, Appellant felt strongly "that a number of very important facts pertaining to [his] innocence were not considered by the court." Appellant contends that this advice of counsel coupled with the counsel's failure to call several defense witnesses resulted in ineffective assistance of counsel. We disagree.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. U.S. CONST. amend. VI; *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and

---

[5] 2016 *MCM,* pt. IV, ¶ 16(b)(3).

begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984).

We review allegations of ineffective assistance of counsel de novo and utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

To establish deficient performance of defense counsel, an appellant must establish his counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). As such, courts "do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (internal citations omitted). "[S]trategic choices made by trial defense counsel are virtually unchallengeable after thorough investigation of the law and the facts relevant to the plausible options." *Id.* at 371 (internal citation omitted).

It is true that Appellant's trial defense counsel recommended to Appellant that he not testify and that trial defense counsel decided not to call any defense witnesses during the findings portion of Appellant's trial. By way of declarations ordered and attached to the record, Appellant's trial defense counsel provided extensive explanations for their advice to Appellant not to testify and their decision to forego calling defense witnesses.

### 1. Recommendation Not to Testify

Three primary considerations informed trial defense counsel's recommendation to Appellant that he not testify. First, Appellant's trial defense counsel were concerned that, if Appellant testified, the Government would confront Appellant with his multiple pretrial statements, which counsel assessed as inconsistent or implausible, and thus undermine Appellant's credibility. Second,

testifying would put Appellant's character for truthfulness at issue, and Appellant had previously received nonjudicial punishment for misuse of a government travel card. Trial defense counsel considered the risk of cross-examination, which would bring to light that prior offense. Finally, trial defense counsel concluded they could rely on evidence from other sources to show that Appellant misunderstood the entitlements forms and lacked criminal intent. After weighing the advantages and disadvantages of Appellant testifying, trial defense counsel advised Appellant against testifying. The advice was reduced to writing, and Appellant acknowledged by initialing the following statements:

> Capt BI and Capt RB have explained the pros and cons of my testifying. I know this is my decision to make regardless of their advice.

> With full knowledge of my rights to testify, I choose [**NOT TO**] testify in my case.

After the Defense rested its case without Appellant having testified, a brief colloquy between the military judge and Appellant ensued.

> [Military Judge]: One thing to ask before we move on. Master Sergeant Alford, I noticed that you did not testify which is entirely your right to testify or not testify, but I just wanted to check in with you and make sure that that was your personal decision not to testify here in your court-martial today.

> [Appellant]: Yes, Your Honor.

### 2. Decision Not to Call Defense Witnesses

Trial defense counsel interviewed each of the witnesses Appellant now avers his counsel were ineffective for not calling. The expected testimony of the witnesses fit into one of two categories: opinion evidence of Appellant's character and evidence of Appellant's relationship with AA. As for the character witnesses, trial defense counsel were concerned that, in testing the foundation of the witnesses' opinions, the Government would be permitted to ask the witnesses if they knew or had heard of a litany of transgressions other than the charged offenses committed by Appellant. As for the fact witnesses, trial defense counsel surmised the following: (1) many of those witnesses lacked personal knowledge of Appellant's relationship with AA; (2) much of what they knew was based on inadmissible hearsay; and (3) what they did know about Appellant's efforts to locate or contact AA after June 2003 did not paint a picture of a father desperate to find and support his daughter.

Having reviewed the clemency matters of Appellant, wherein Appellant details what he and the defense witnesses not called would have testified about

at trial, and the declarations of trial defense counsel, we conclude that Appellant's trial defense counsel made objectively reasonable strategic choices from the available alternatives. Defense counsel's level of advocacy did not "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers." Accordingly, we find Appellant's trial defense counsel were not ineffective. Further, assuming *arguendo* his counsel's performance was deficient, Appellant has failed to show "a reasonable probability that, absent the errors," there would have been a different result.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

13